## FISHBACK *v.* WESTERN UNION TELEGRAPH COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

No. 341.   Argued January 22, 23, 1896. — Decided March 2, 1896.

A Circuit Court of the United States has no jurisdiction of a bill to enjoin the collection of separate county taxes by separate county officers, in the State of Arkansas, against the Western Union Telegraph Company, (a corporation which has accepted the provisions of the Statute now codified in the Revised Statutes as Section 5263 to Section 5269,) on its line in each of said counties in that State, when the amount of the tax in no one of the counties reaches the sum of two thousand dollars ; and this result is not affected by the fact that if the county assessments were aggregated they would exceed two thousand dollars, as the several county clerks or tax collectors cannot be joined in a single suit in a Federal court, and the jurisdiction sustained on the ground that the total amount involved exceeds the jurisdictional limitation ; nor by the fact that the railroad commissioners of the State, who had already acted in the matter, were made parties defendant to the suit.

THIS was a bill filed by the Western Union Telegraph Company January 2, 1894, in the Circuit Court of the United States for the Eastern District of Arkansas against William M. Fishback, Henry B. Armistead, and Charles B. Mills, constituting the board of railroad commissioners for the State of Arkansas, and some forty-seven clerks of different counties in the State, in which complainant had lines of telegraph, alleging that the complainant was a corporation and citizen of New York and each of the defendants was a citizen of Arkansas, " and that the amount or value in controversy in this suit exceeds the sum of two thousand dollars, exclusive of interest and costs ; " that on and prior to April 8, 1893, complainant was and had ever since been engaged in the business of operating telegraph lines and sending telegrams over the same to different parts of the United States, with extensive cable lines under the sea, having its general office in the city of New York ; that on that day the general assembly of Arkansas passed an

act entitled "An act to assess and collect taxes from certain corporations," a copy whereof was attached to and made part of the bill; that, as stated in the company's return under the act, the value of the lines of the company within Arkansas made upon the basis of actual cost less depreciation, would not exceed $102,229.68, and that if valued on the basis of the cost of the reproduction of an entirely new line, would be $282,763.71; that any apportionment to Arkansas of the company's capital stock on a mileage basis would necessarily include the value of bonds, real estate, contracts, franchises, and patent rights, all of which were outside the jurisdiction of the State of Arkansas; that in Arkansas the gross receipts averaged $23 per mile of wire, and that the net earnings in Arkansas did not exceed $6 per mile of wire; that taking the entire capital of the company at the stock exchange price of July 1, 1893, if the apportionment thereof to the State of Arkansas upon the mileage basis were taxed at an average of two per cent, "which is probably the average rate of taxation in Arkansas," it would require the company to pay a tax annually in Arkansas of nearly fifty per cent of its net earnings from all its business in that State, whether from interstate or local traffic, which was a rate of taxation unheard of, grossly unequal and substantially destructive. It was further alleged, among other things, that on July 1, 1867, the company formally accepted the provisions of the act of July 24, 1866, now sections 5263 to 5269 of the Revised Statutes, and by virtue thereof the company was an agent of the government of the United States in the transmission of intelligence by electricity, and that the enforcement of the scheme of taxation provided in the alleged law would substantially destroy the value of the company's property in Arkansas and prevent it from performing its obligations under said act. Schedules of the real estate of the Western Union Telegraph Company, of the miles of wire and poles of all the lines owned by the company within the State of Arkansas, and the location thereof in each county; and of the gross receipts for 1892, were also made part of the bill. The bill charged that the act in question was unconstitutional and void for reasons given at length, but averred that

the board of railroad commissioners of the· State, composed of the governor, secretary, and auditor, had nevertheless assessed complainant's property for taxes within the State, under said act, at the sum of $195 per mile of its lines of telegraph therein, making the whole amount of property thus assessed $396,387, and a copy of the assessment was made a part of the bill, showing the number of miles, the value per mile, and the total value in each county.; also the mileage in cities and towns, and the total value thereof.

And it was also alleged that the secretary of State had certified said several assessments to the several county assessors, who had listed the same as property owned by complainant subject to taxation for 1893 in those counties and had returned said assessments to the county clerks thereof, whose duty it was to make out tax books for their respective counties, enter the assessments, levy the taxes thereon at the rate fixed for state, county, and all other purposes, extend the same on the tax books, and deliver them to the tax collectors with warrants requiring the collection of said taxes.

The prayer of the bill was that the railroad commissioners should be required to show the grounds of their assessment; that the act of April 8, 1893, be decreed to be unconstitutional and void; that the act of the board in assessing complainant's property for taxation be cancelled; and that defendants be enjoined from proceeding under said act or pursuant to said assessment, to execute the same, and the county clerks specifically restrained from discharging the dut... · t' reby imposed.

On January 29, 1894, complainant filed an amended bill averring that since the filing of the orig. al bill the county clerks had, pursuant to the assessment of complainant's property by the railroad commissioners, made out the tax books for their several counties, entered the said several assessments, levied the taxes thereon at the rate fixed for state, county, and all other purposes, spread the same upon the tax books and delivered the books to the several tax collectors of the several counties, together with a warrant authorizing and requiring the collection of the same. The amended bill then charged that forty-seven persons, naming them, were the

tax collectors for the counties severally named, and citizens of Arkansas, prayed that they be made parties defendant and be enjoined from proceeding to collect the taxes.

Defendants demurred to the bill and amended bill, and on February 20, 1894, the Circuit Court overruled the demurrer, whereupon complainant dismissed the bill as to the several county clerks, and the defendants, electing to abide by their demurrer, it was decreed "that the defendants and each and every of them, their agents and deputies, be perpetually restrained and enjoined from taking any steps or proceeding in any manner to enforce the collection of taxes assessed against the property of the Western Union Telegraph Company under the assessment made by defendants William M. Fishback, Henry B. Armistead, and Charles B. Mills, in their capacity as a board of railroad commissioners for the said State of Arkansas, under the provisions of an act of the general assembly entitled 'An act to assess and collect taxes from certain corporations,' approved April 8, 1893; and for costs." An appeal to this court was duly prayed and allowed, citation waived, cost bond approved and filed, together with an assignment of errors.

*Mr. A. H. Garland* for appellants. *Mr. James P. Clarke* and *Mr. R. C. Garland* were on his brief.

*Mr. Rush Taggart* for appellee. *Mr. John F. Dillon* was on his brief.

*Mr. Willard Brown, Mr. Charles W. Wells* and *Mr. U. M. Rose* filed a brief for appellee.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

It is argued that under the averments of the bill the Circuit Court had jurisdiction on two grounds: 1. Diverse citizenship; 2. In that the case made by the bill was one arising under the Constitution and laws of the United States. Even if this

were so, the Circuit Court could not take cognizance of the suit unless the matter in dispute exceeded, exclusive of costs and interest, the sum of $2000. Act of March 3, 1887, c. 373, §1, 24 Stat. 552; act of August 13, 1888, c. 866, 25 Stat. 433; *United States* v. *Sayward*, 160 U. S. 493, 498.

In *Walter* v. *Northeastern Railroad Co.*, 147 U. S. 370, we held that "a Circuit Court of the United States has no jurisdiction over a bill in equity to enjoin the collection of taxes from a railroad company, when distinct assessments in separate counties, no one of which amounts to two thousand dollars, and for which, in case of payment under protest, separate suits must be brought to recover back the amounts paid, are joined together in the bill, making an aggregate of over two thousand dollars."

The rule is without exception that the facts upon which the jurisdiction of the courts of the United States rests must appear in the record of all suits prosecuted before them. *Ex parte Smith*, 94 U. S. 455; *Metcalf* v. *Watertown*, 128 U. S. 586. The general averment in this bill that "the amount or value in controversy in this suit exceeds the sum of two thousand dollars, exclusive of interest and costs," was a mere conclusion, and it was nowhere shown that the amount of any one of these distinct county assessments, the collection of which was entrusted to these tax collectors, exceeded that sum, while, on the contrary, the total valuation of the property of the telegraph company assessed as belonging to or operated by it in any one county was such as to preclude the idea that the amount of the assessment in such county would approach two thousand dollars. If the rate of taxation in Arkansas did not exceed two per cent as indicated in the return of the telegraph company to the railroad commissioners, the highest amount of taxes in any one county would fall below $400.

Although if these county assessments were aggregated they would considerably exceed two thousand dollars, yet the several county clerks or tax collectors cannot be joined in a single suit in a Federal court and the jurisdiction sustained on the ground that the total amount involved exceeds the jurisdictional limitation, as already ruled in Walter's case, nor do we

find any ground as we did in *Northern Pacific Railroad Co.* v. *Walker*, 148 U. S. 391, upon which an amendment could be permitted.

Without intimating in any degree, under what circumstances, if at all, such a bill might lie, we may add that jurisdiction cannot be sustained here on the ground that, as the railroad commissioners were parties defendant, this bill might be treated, though they had already acted, as seeking to restrain the making of the assessment as a whole.

*Decree reversed with costs and cause remanded with a direction to dismiss the suit for want of jurisdiction.*